24-2665 Eastern Arkansas Stephen Allen v. Nature Conservancy, et al. May it please the Court. Your Honor, I have not argued in this Court during this century, so I apologize if I'm a little rusty in my approach to you today. I have the honor of representing Stephen Allen, who is the administrator of the estate of Jared Allen. I'm sure you know the basic facts of this case, so I won't dwell on those, but there are a couple of issues I want to address to you today. The first one is whether the District Court erred in granting the motion by TNC to dismiss on the ground that the plaintiff failed to adequately plead malice by TNC in his complaint. We have three different complaints in the case, but the allegations as to TNC are essentially the same on all three. As the Court is aware, the Arkansas Recreational Use Statute, Section 18-11-307, allows an exception to the rule immunizing negligence on the part of a recreational property owner in cases of malice. It says specifically, an exception exists for malice, but not mere negligence, failure to guard or warn against an ultra-hazardous condition, structure, personal property, use, or activity actually known to the owner to be dangerous. Part of the problems in this case before 2015 was there are so many different meanings to the word malice in the law. I've been dealing with this for almost half a century and there are all different kinds of meanings ascribed to the word malice, whether it's New York Times against Sullivan malice or whatever. The Arkansas Supreme Court, in a case we rely on heavily in this case, Roeder against United States recognized at least five different kinds of malice, including malice given to or marked by or arising from malice, which isn't helpful, the intent without justification or excuse to commit a wrongful act. Reckless disregard of the law or of a person's legal rights or ill will or wickedness of heart. And those aren't an exclusive list of the meanings that different courts in different circumstances have ascribed to malice. In the Roeder case, the U.S. District Court, I believe in Arkansas, asked the Arkansas Supreme Court to answer a question as to whether or not malice includes reckless conduct on the part of the defendant. And ultimately the court answered that affirmatively. And in arriving at that, the court did not limit itself to reckless conduct by the property owner. And there are a couple of cases that it cites. I thought the statute eliminated negligence and recklessness. It did. Okay. So we know it's something more than recklessness. Well, it is now. It wasn't at that time. The statute had not been amended until 2015. So in 2014, recklessness was still in play. And that is what the court answered in holding that reckless disregard for the rights of others would constitute malice under the meaning of the ARUSA, ARUS. What's the relevance of a prior law? Well, I think it explains what the current law is. It's all explained in the brief. Why are we going over that again? I don't know that it really squares with the law the way it is right now. And if I could, Your Honor, just take a moment on this. The statute's wrong? I don't understand. No, the statute is right. The statute reflects both what was left over after the legislature took out recklessness from the equation and left. The question is, what did it leave? And what it left was conscious disregard for the safety of others, I would submit. Counsel, I think in 2023 in Hutchinson v. U.S., this court addressed the meaning of malice for the purposes of ARUS. And we cited to the statute, a malicious is an intentional act of misconduct that the actor is aware is likely to result in harm. Are you saying that's not the correct? No, I say that's exactly correct. I think that was correct. So, where in the pleadings were facts pled to show malice under that definition? And there are three different complaints, but they all have essentially the same parts. And they appear around pages 158 of the appendix that we filed with the court, which were the pleading was specifically in connection with that. If I may elaborate on that, Your Honor, is the pleading claims that one month before Jared drowned in this case, the defendant received a report from an expert witness it commissioned to study the site of both this bridge and another bridge that was substantially the same as the bridge involved in our case. That expert found that... Well, that would tend to show knowledge of a dangerous condition. Yes. But does it show an intentional act of misconduct? Well, it shows... I think that's the issue. It is. And knowing all of the things that the expert pointed out, velocity of the water, the risks that were posed by the velocity of the water, the failure to provide any kind greater inlet to the culverts. Here is what the plaintiff alleged at page 140 of the appendix. He alleged that TNC had actual knowledge of the design of the Alburgh and Waterlisk bridges and consciously decided not to place screens over the inlets to keep people out and consciously decided not to warn recreational users that it was a danger. And I would submit that constitutes a sufficient allegation to allege that they intentionally and consciously chose not to provide that kind of ameliorative remedy to prevent what happened to Jared in this case. I hope that answers the court's question. So the expert report was on a completely different bridge, was it not? Say again? The expert report involved a different bridge. Yes. So you're saying they should have put two and two together and that's an intentional act? Yes. And as a matter of fact, Judge Moody in his order said that the two bridges were substantially or virtually the same. And if you know that the culverts are too small on the Alburgh bridge and it will cause velocity of the water to accelerate and suck people into the culverts, the same thing would be true with the identical bridge. Was that alleged? Yes, sir. That the two bridges are substantially the same as to this? Yes. What paragraph of the complaint is that? Let me see if I can find it for you real quickly, Judge. I don't have that in front of me, but in rebuttal, I'll give you a specific page number and paragraph number, Your Honor. So the question comes back to, and this is looking at the last clause in section 307, which says activity failing to warrant actually known to the owner to be dangerous. But of course, we're at the pleading stage right now. This is not a summary judgment case. And at the pleading stage, we have alleged that the defendant knew and consciously disregarded that danger. And based on that, we believe that we have satisfied the requirement of section 307 to prove malice as it's now defined by the statute. Does it matter whether the defendant owns the bridge? Not really. Judge Rudy decided it did not. And based on those circumstances, we're impeding from his judgment in this case of dismissal. And the reality is- So they had a duty to address a dangerous situation on a bridge that they didn't own? I'm sorry? So they had a duty to address a dangerous situation on a bridge that they did not own? Well, they could have- they owned the property where the people were swimming, Your Honor. And if they knew that the bridge had a defect that would cause people to get sucked into the culverts, I would submit under those circumstances, they have a duty to warn at the very least. Well, that's- there's a huge leap in there. Why is that, Your Honor? Well, somebody owns the property on which all the bridges in the country go, usually not the bridge operator and builder. And you're saying those property owners have a perpetual duty to seek out and learn everything that might be dangerous that the bridge operator isn't doing. I don't agree. I don't think that's the law. I don't think it is either, Your Honor. And that's not what I'm saying. I'm saying in the case- But I heard. And I misspoke. And I apologize for that. What I was trying to say is they had a report that this bridge that formed the structure by which the swimming pool was created, where Mr. Allen's son was swimming on the day in question, they were aware posed a risk if they get sucked into the culvert under the bridge. Now, I would add that the district court did not address the question of whether or not the bridge was owned by the TNC or not and said, quite frankly, it really doesn't matter in the context of this case because the area where he was swimming, which was the area that ultimately led to his demise, was in fact owned by TNC. And it is interesting in that regard in what the trial court found in this case. It said, among other things, in addressing the question of what it is that TNC knew, and this is at page, well, this is one of the things the court said. The court finds plaintiff has adequately pleaded the existence of a duty to Jarrett and a breach of that duty. It is reasonable to infer from plaintiff's allegations that TNC should have known that members of the public were using the location for recreational purposes. Likewise, the allegations that TNC had noticed in May of 2021 of the serious danger to recreational users of the property posed by the similarly constructed Allberg Bridge permits the inference that TNC acted with utter indifference or conscious disregard of the safety of others in not warning of the danger posed by the hidden danger. What are you reading from? This is Judge Moody's order granting motion to dismiss, Your Honor, entered by March 15, 2024. So the trial court found that there was evidence to show that they acted with knowledge. And in fact, he describes it as TNC acted with utter indifference, a conscious disregard of the safety of others, and not warning of the danger. Get on to his basis for dismissing them. The basis for dismissing? Yeah. What he said was... From what you've just read, it sounds like an order of not dismissing. I would think that it would too, Your Honor. That struck me that way. I assume he went on and gave some reasons for dismissing. I'll be glad to tell you those reasons, Your Honor. I would think so, because that's what we're here for. All right. We're not here for all this background. All right. So what he said as his reason for dismissal is, in this legal context, plaintiff's allegations that TNC owned the property where the accident occurred, that it ran to the dangerous condition of the bridge before the accident, that it did nothing to warn or protect others against the danger, and that a young boy lost his life as a result, is insufficient to bring this action under the exception in the ARUS for malicious conduct. The court finds that plaintiff's allegations of TNC, failure to warn or protect, do not contain a factual basis that allows the inference that an intentional act of misconduct occurred. For example, plaintiff does not allege that... So everything you've said before just simply means you disagree with what you just read? Yes. That's exactly what it means. Why didn't we just go there? Well, I guess I was too slow on the uptake, Your Honor. I apologize for that. Well, you know, you started out saying you knew we knew the facts, and now here, when you're out of time, we finally get to the reason for the first issue you wanted to discuss. All right. And I'm out of time, Your Honor. Unless you have some more questions for me, I'll sit down. Brief has been thorough. So we're on board. All right. Thank you, Your Honor. Mr. Thompson, again, you're for the Nature Conservancy. Yes, Your Honor. And we have divided the time. My co-counsel represents the insurance companies. Those weren't addressed in the first argument, but she is here to address any question you all might have about the... You're not going over 10 minutes. No, I understand, Your Honor. You can take the whole 10, but when the 10 is gone, it's gone. Yes, Your Honor. I just wanted you all to be aware that if you have questions about the insurance companies, we'll be happy to bring her up so she can answer those. I will start with the issue that was addressed by my opposing counsel, and that's the issue of actual malice. And I think the place to start, because the district judge's basis for dismissing the Nature Conservancy, ultimately, was that they had not alleged facts that allowed a plausible inference of an intentional act of misconduct. Judge Gottschall, you're right. In Hutchison, this court defined what malicious conduct currently means under the law. You all basically just quoted the current statute, so there's not really much debate over what malicious conduct means now, and it does require an intentional act of misconduct. So the actual facts that they allege, and I will freely acknowledge they have conclusory allegations that say we meet this standard. They certainly do. But the actual facts alleged are that Nature Conservancy received a report of a different bridge with, and you can, the reports are attached. They're part of the complaint. They have different descriptions of the bridge. They are not identical, of a different bridge shortly before. But counsel, they are basically the same. So why isn't it a reasonable inference? Why couldn't it be a reasonable inference to draw that they are the same? If this were a negligence case, I wouldn't have, if you could proceed on a theory of negligence in this case, I wouldn't have moved to dismiss the complaint. They're close enough for negligence, but we need an intentional act. That someone saw this report about a different bridge, that report made them subjectively aware of dangers at the Wideless Bridge, and then they decided, here's what I'm going to do that's wrong in response to receiving that, in response to seeing that. There's just no facts to allege that. There wasn't much time between the two reports, and they aren't identical, they aren't identical bridges. Perhaps it suffices for a negligence claim, but they don't have a negligence claim against the Nature Conservancy, thanks to the recreational use statute. Judge Gross, I wanted to answer a question that was posed to you. You asked, well, does it matter if we owned the property at the bridge at issue in this case? And from the facts of the complaint, we did not. They allege it was a county road. So from the facts of the complaint, we did not own the bridge. For the recreational use statute, no, it does not matter. And that was the basis for the district judge's finding. I think there are cases in tort law where if you have a bridge leading to your business, your business has signs that say, come on in, and you don't warn people that the bridge is out, that might be a problem. In Arkansas tort law, there's a single case on extraterritorial liability. It's Oller versus Spakes. And it involved a business, knew their business invitees, they had too small of a parking lot, and they were having to park next door. And they had to walk over some railroad ties to get from the parking lot next door to their property. So it was for ingress or egress to the property. And the court held in that case that it was possible that they owed a duty to warn about those railroad ties. Here, they're not arguing that they had to cross this bridge to get to the Nature Conservancy's property. This is where they wanted to go. They found this bridge. They thought that looks like a nice place to swim. And they got out of their car and they swam right there. That's not at all on point with Oller versus Spakes. And the general rule is you don't owe a duty to guard against or warn against property you don't own. And we cite for this Arkansas Court of Appeals case, Gray versus Mariana Housing Authority. It was a water main that was surrounded on all sides by the defendant's property. And the court held that there was no duty to warn or guard against that water main because the property owner didn't own it. So notwithstanding the fact that it was surrounded on all sides, that's not enough to create a duty for property you don't own. And again, this isn't a summary judgment issue because they allege in their complaint it's a county road. And a county road means I don't own it. And so under the Arkansas Recreational Use Statute, the case law is clear that you don't ever have to reach the recreational use statute if we wouldn't owe a duty under ordinary court law. So that is an issue fully developed in the case law. It provides you all an alternative pathway to affirmance if you want to do that instead of the recreational use statute. The other issue that is also developed and is an alternative basis is on malicious conduct. We talked a lot about malicious, but we didn't talk about the fact that it has to be malicious conduct related to an ultra-hazardous condition or activity. And yet from the complaint and the documents attached to the complaint, we can see that low water crossings are common in this part of the state of Arkansas. Swimming near low water crossings is common in this part of the state of Arkansas. And a common activity or structure cannot be an ultra-hazardous one. And of course, the complaint alleges things they think we should have done in the exercise of ordinary care. So independent of the maliciousness issue, there's no real allegation that this is an ultra-hazardous condition. I would like to give my co-counsel an opportunity to answer any questions you all have about the insurance, so I will yield the rest of the time. Yes, thank you. Ms. Young. Good morning, your honors. Kim Young on behalf of the insurance company, Appalese. The dismissal of the insurance companies turns on this issue, and that is whether or not the protection against liability afforded by the recreational use statute is broad enough to constitute immunity from suit, as required to bring a direct action claim against a landowner's insurance carrier or any dependent insurance carrier. It's our position that the district court was correct in holding that the recreational use statute does not open the door to a direct action against the carrier, because the plain language of the recreational use statute includes two requirements, and the plaintiffs did not meet either of those requirements here. The first requirement is that the direct action statute applies only to an entity that is immune to suit for tort, whereas the recreational use statute has been interpreted by Arkansas case law to merely provide a defense to a suit, which is a much more narrow protection. The second factor and requirement for the direct action statute is that it requires a plaintiff suing the carrier to meet the same burden of proof against the insured that they would in a typical claim, and that is to prove that they were injured, quote, on account of the negligence of the insured here at the Nature Conservancy. Because the only basis that Mr. Allen has cited for a direct action is the recreational use statute, and because the application of the recreational use statute results in a conclusion that the TNC, the insured, owe no duty as a matter of law to these plaintiffs, you can have no negligence without duty, and therefore this second requirement of the direct action statute has also not been met. And I would point out that that second basis relied upon by the district court has not been challenged by Mr. Allen on appeal. What types of entities did the legislature intend to cover with the direct action statute? Who would be immune from suit? So the statute lists a number of different entities, including governmental entities, including those that are charitably immune, and our Arkansas Supreme Court has noted that in practice, the direct action statute has only been applied to governmental entities, county hospitals, and entities that are charitably immune. And here Mr. Allen has not made an allegation. What did you say it was aimed at? You started out saying it was directed at and I didn't hear the words. Yes, entities that are entitled to charitable immunity, governmental entities, and county hospitals are in practice what the direct action statute has been applied to. The plain wording of the statute states that it applies to an organization of any kind and character so long as that organization is, quote, immune to suit for tort. So it's really less about the particular type of entity and more about whether or not that entity is immune from suit in all tort. And I think charitable immunity is an affirmative defense, is that right? Yes, Your Honor. So is it true immunity then? Charitable immunity has been determined by the Arkansas Supreme Court to constitute immunity from suit. My point is just that you could almost analogize a charity that has an affirmative defense with someone under the ARUS statute. Yeah. I think the distinction there would be that the Arkansas case law, most recently the Seth case and the Neal case, have interpreted charitable immunity to be the broader of those two when making the distinction. Whereas the recreational use statute has been consistently applied to be the more narrow defense to liability and not the broad immunity from all tort suit. And because my time is out, if there are no further questions, we would ask that the court affirm the dismissal of the insurance companies. Thank you. Thank you, counsel. The case has been fairly briefed and covered a lot of ground and argument and we'll take it under advisement. Thank you. Thank you.